In re GRAND JURY
SUBPOENA. (Four Cases)

UNITED STATES of America,
Plaintiff–Appellee,

v.

UNDER SEAL,
Defendant–Appellant. (Four Cases)

Nos. 89–5619, 89–5632 through 89–5634.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1990.

Decided Dec. 6, 1990.

James Allen Rothschild, Anderson, Coe & King, Baltimore (James P. Ulwick, Kramon & Graham, P.A., Baltimore, on brief), for defendant-appellant.

Martin Stanley Himeles, Jr., Asst. U.S. Atty., Baltimore (Breckinridge L. Willcox, U.S. Atty., Baltimore, on brief) for plaintiff-appellee.

Before SPROUSE and CHAPMAN, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

SPROUSE, Circuit Judge:

This appeal concerns information developed by a tax fraud investigation initiated by the Internal Revenue Service (IRS) and pursued by both the IRS and a federal grand jury. The investigation targeted appellants—a parent corporation, its subsidiaries, and several individual employees of the corporations. Records of two of the corporations were seized by IRS agents pursuant to search warrants and records of the other corporations by grand jury subpoenas. The records seized pursuant to search warrants were subsequently shown to agents in the Civil Division of the IRS. The IRS also served a grand jury subpoena requesting the records of the parent corporation, but the latter refused to comply.

Contending that an IRS intelligence agent violated Rule 6(e)(2) of the Federal Rules of Criminal Procedure[1] by making the documents available to IRS civil agents, the corporations and the individual employees who were targets of the investigation moved for the return of material seized by the two search warrants, and requested an evidentiary hearing on the matter. On appeal, appellants also attack the validity of the search warrants. In addition, the parent corporation moved to quash the subpoena issued for its records. The district court denied all motions. We affirm.

I.

John Doe[2] was a tax accountant who prepared returns for the corporate and indi-

---

1. Rule 6(e), in pertinent part, states:
 (e) Recording and Disclosure of Proceedings
 (2) General Rule of Secrecy.... [A]n attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.
 (3) Exceptions.
 (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—
 (i) an attorney for the government for use in the performance of such attorney's duty; and

 (ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.
 (B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law.
 Fed.R.Crim.P. 6(e)(2)–6(e)(3).

2. The grand jury investigation is ongoing and the court records are still sealed.

vidual grand jury targets. The corporations owned a number of cemeteries and were principally involved in selling and maintaining cemetery plots. In June 1986, Doe was caught violating certain criminal tax laws in an IRS "sting" operation. Doe turned government informant and provided information that a vice-president of the parent corporation for the cemeteries and officers of the various subsidiaries were purposefully understating income and overstating expenses on their tax returns. In addition, Doe related under-the-table payments from the parent corporation to employees of subsidiaries, a scheme to defraud customers by selling them cemetery plots already owned by others, the creation of fraudulent receipts to support nonexistent expenses, the preparation of false "1099" forms to indicate lower payments of income from the corporation to individuals, the submission of false tax returns and financial statements to lending institutions, the falsification of sales reports in order to justify higher commissions, and the "laundering" of large sums of cash through individual bank accounts and returning the cash by false loans.

After Doe's admissions, the IRS conducted surveillances of the businesses and of the residences of individual employees. In September 1986, a grand jury also was convened to investigate the matter. On September 24, 1986, IRS agents obtained warrants to search the offices of two of the subsidiary cemetery corporations (hereinafter cemeteries A and B). The affidavit supporting the search warrant application was based on the investigation of Doe and the information he later provided. The search warrants were executed the following day, September 25, 1986, and the records of cemeteries A and B were simultaneously searched by numerous IRS agents, who, after a day's search, seized numerous boxes of records. On that same day, grand jury subpoenas also were served on cemeteries A and B.[3] The subpoenas requested the same records seized pursuant to the search warrants. Since the

seizure of records pursuant to the search warrant was comprehensive, no property was produced in response to the grand jury subpoenas from cemeteries A and B.

Four other cemetery corporations, all subsidiaries of the parent corporation, were also served with grand jury subpoenas on September 25, 1986. Each of these four corporations timely produced the records identified in the subpoenas.[4]

All the documents were maintained in the same IRS storage building. Special Agent Mary Bowe of the Criminal Investigation Division of the IRS, who had been assigned to assist the grand jury investigation, assumed custody of all the documents. She testified that she segregated those documents obtained by search warrants from those obtained pursuant to the grand jury subpoenas. In October of 1986, Bowe made available to agents in the Civil Division of the IRS for civil purposes the documents obtained pursuant to the warrants.

The investigation of appellants proceeded slowly. Some two years later, on December 15, 1988, the government served the parent corporation with a grand jury subpoena requesting production of its records. It declined to honor the subpoena. In January 1989, the parent corporation filed a motion to quash the grand jury subpoena issued to it. On that same day, it filed a motion in the district court to enforce compliance with Rule 6(e) of the Federal Rules of Criminal Procedure, alleging that Bowe had improperly disclosed grand jury materials to civil IRS personnel. After a nonevidentiary hearing, the district court denied both motions. The court later denied subsequent motions for reconsideration of its rulings and motions by cemeteries A and B for the return of their seized property. On June 23, 1989, the court, on the initiative of the government, held the parent corporation in contempt for not producing its records, but stayed the imposition of sanctions pending this appeal.

---

3. The subpoenas were returnable on October 9, 1986.

4. There were no search warrants issued in connection with those records.

## II. The Search Warrants

■ Appellants first attack the validity of the search warrants, contending that they were constitutionally deficient as overly broad and were issued without probable cause. We disagree. The warrants authorized searches for the following items:

Books, records and documents relative to the financial transactions of [cemetaries A and B], their officers and employees, specifically: Forms W–2 and 1099; Forms 940, 941 and 1120 tax returns; workpapers, balance sheets and financial statements; interest and expense ledgers and/or records; accounts receivable and payable ledgers and/or records; general ledgers; invoices, billing statements; cash receipts posting machine and/or journal; payroll checking accounts, workpapers and/or records; plot location files and/or records; checking and saving accounts, statements, checks and deposit tickets; sales contracts; notes and loan receivable and payable ledgers and/or records; and any and all documents reflecting the cost of goods for the businesses operated at [cemetaries A and B], the profits received from the sale of those goods, and all records reflecting the manner in which income is received, federal income tax evaded, monies laundered or income hidden.

Appellants contend that the warrants failed to specify the documents sought with the requisite particularity. Consequently, appellants contend that the warrants authorized "a general exploratory rummaging" in violation of settled law regarding the constitutional requisites of a search warrant. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *United States v. Owens*, 848 F.2d 462, 463 (4th Cir.1988).

■ The legality of a search warrant, of course, is not governed by a bright-line test. Rather, the inquiry is fact specific and the permissible nature of the search is, to a degree, dependent on the legitimate scope of the underlying investigation. As we stated in *United States v. Torch*, 609 F.2d 1088 (4th Cir.1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980):

[T]he test for the necessary particularity is a pragmatic one: "The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved.... [T]here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized."

*Id.* at 1090 (*quoting United States v. Davis*, 542 F.2d 743, 745 (8th Cir.), *cert. denied*, 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976)). Moreover, in *United States v. Shilling*, 826 F.2d 1365 (4th Cir. 1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988), we again emphasized that the validity of the warrant depends to a degree on the underlying investigation, stating:

Here, the warrant was issued by a Magistrate and contains a two-page list of items for the search. Although the warrant uses generic terms (such as books, records, bank statements, etc.) without detailed descriptions, we consider this to be acceptable, since the Government could hardly have known in detail what precise business records were maintained by the defendant. Likewise, there is no flaw in the fact that the documents covered by the warrant did not have specific time periods attached. The dates of specific documents could not have been known to the Government, and, as for income tax violations, documents from an earlier time may have bearing on the tax violations alleged in a later year.

*Id.* at 1369. Here, the investigation is aimed at a number of employees of several suspected cemetery corporations as well as the corporations themselves. The allegations, if true, would indicate various criminal practices ranging across and through several corporations—encompassing numerous business activities on the part of the individuals and corporations. Therefore, while the search warrants for both cemeteries A and B listed numerous items, we are persuaded that the descriptions were sufficiently particularized considering

the wide-ranging nature of the criminal activities under investigation.

 Nor do we find merit to appellants' contention that the warrants were issued without probable cause. Appellants correctly state that a magistrate must have a "substantial basis" for concluding that probable cause exists. However, the existence of probable cause *vel non* is determined on the "totality of the circumstances" analysis. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In *Gates,* the Supreme Court established the parameters for making such a probable cause determination, stating:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332, (*quoting Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), *overruled on other grounds, United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). Appellants argue that the affidavit failed to establish probable cause under the *Gates* criteria. We disagree. A twenty-eight-page affidavit by Agent Bowe supported the application presented to the magistrate. It detailed the information provided by Doe which implicated the corporations, officers, and individual employees. Doe, among other things, had related that he participated in many of the tax crimes at the direction of corporate officers and employees who subsequently became targets of the investigation. Appellants, however, attack Doe's credibility, stressing that his cooperation with the IRS was induced by his admitted guilt and expected immunity from prosecu-

tion. Doe's information, however, was corroborated by an affidavit of the undercover agent principally responsible for apprehending him and independent information in IRS files which included documents seized from Doe's residence when he was under investigation as well as information obtained by surveillance. In our view, the affidavit easily satisfied the *Gates* criteria for establishing probable cause.

### III. Rule 6(e)(2)

Appellants next contend that the district court erred in denying its motion to "enforce compliance with ... Federal Rule of Criminal Procedure 6(e)." In a separate argument, appellants contend that the district court erred by refusing to conduct an evidentiary hearing on this motion. We think the court ruled properly in both instances.

After IRS agents at both cemeteries A and B had identified and seized the materials requested pursuant to the search warrants of September 24, 1986, the materials were removed to an IRS building. None of the records of A and B were obtained by the IRS pursuant to the grand jury subpoenas because the same records for which the subpoenas were issued had been seized under the aegis of the search warrants. There were, however, records and materials furnished by four sister subsidiary cemetery corporations pursuant to grand jury subpoenas. The records of A and B and the records of the four other subsidiary corporations were eventually maintained in the same IRS storage room. The A and B records, however, were physically segregated from the records of the other four cemeteries. Agent Bowe invited agents from the IRS Civil Division to examine the A and B records but it is undisputed that they had no access to records which had been obtained pursuant to the grand jury subpoenas.

 While the procedure utilized by the IRS agent is no doubt routine and permissible in investigations where records are seized solely by search warrant,[5] the cir-

---

**5.** As appellants concede, it is generally accepted that related IRS criminal and civil proceedings

cumstances present here are unique not only because some of the information stored in the same room was obtained by grand jury subpoenas, but because the search warrants were obtained during the pendency of a grand jury investigation and executed on the same day that the grand jury subpoenas were served.

■ After a lengthy and careful colloquy between appellants' counsel and the district court, the court found that no evidentiary hearing was required as the Rule 6(e) issue raised no question of fact. The government candidly admitted that the civil agents had access to A and B's records at the invitation of its supervising intelligence agent. The district court found that there was no basis to believe that the civil agents had access to any of the material which had been obtained pursuant to grand jury subpoenas. Thus, we agree that there was no need for an evidentiary hearing on this question, and the court correctly refused to conduct one.

■ There remains only the legal issue of whether, under the undisputed circumstances of this case, the IRS supervisory intelligence agent violated the secrecy requirements of Rule 6(e)(2) by making available to IRS civil agents the materials obtained from locations A and B by search warrants. Rule 6(e)(2) prohibits the disclosure of "matters occurring before the grand jury." Therefore, the critical question before us is whether the materials obtained by the two search warrants are "matters occurring before a grand jury" and, accordingly, entitled to the secrecy protection of Rule 6(e)(2).[6] We hold that they are not.[7]

While recognizing that the records and materials of cemeteries A and B were obtained by search warrant, appellants contend that since there was an ongoing grand jury investigation the documents are effectively grand jury material. They correctly point out that Bowe, the IRS intelligence agent directing the criminal investigation, was assisting the United States Attorney in the grand jury investigation and that grand jury subpoenas were effected for the same records and materials that were obtained by the search warrants. Although presenting a close question, we cannot agree that the circumstances surrounding the seizure of the corporate records and materials compel the conclusion that the IRS investigation and the grand jury investigation were integrated.

■ The substantive content of "matters occurring before the grand jury" can be anything that may reveal what has transpired before the grand jury. *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 63 (3d Cir.1982); *In re Grand Jury Investigation*, 610 F.2d 202, 216–17 (5th Cir.1980). However, Rule 6(e)(2) protects from disclosure "only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process."[8] *Catania*, 682 F.2d at

---

may be pursued simultaneously and that information may be shared between the divisions, absent a showing of bad faith on the part of the IRS. *See United States v. Krauth,* 769 F.2d 473, 478 (8th Cir.1985); *United States v. Amerada Hess Corp.,* 619 F.2d 980, 985 (3d Cir.1980); *see also United States v. Kordel,* 397 U.S. 1, 11, 90 S.Ct. 763, 769, 25 L.Ed.2d 1 (1969).

6. For purposes of Rule 6(e)(2), a civil tax audit is not "preliminary to or in connection with a judicial proceeding" and therefore grand jury materials covered by Rule 6(e)(2) may not be disclosed under the Rule 6(e)(3) exceptions for use by IRS "civil" personnel pursuant to court order. *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983).

7. Thus, we do not reach a potentially complicating separate question concerning the quantum of protection afforded to documents that are

concededly grand jury documents as opposed to the quantum of protection afforded to other information gathered by the grand jury process. *See* Nervi, *FRCrP 6(e) and the Disclosure of Documents Reviewed by a Grand Jury,* 57 U.Chi. L.Rev. 221 (1990).

8. The purposes of grand jury secrecy are several: (1) to prevent the escape of a person against whom indictment may be sought; (2) to insure that the grand jury has freedom of deliberation; (3) to prevent subornation of perjury or tampering with witnesses who may later appear at trial; (4) to encourage full disclosure by witnesses; and (5) to protect the innocent accused from publication of the fact that they have been under investigation. *In re Subpoena to Testify,* 864 F.2d 1559, 1562 n. 2 (11th Cir.1989).

63. At least two of our sister circuits have held that information produced by criminal investigations paralleling grand jury investigations does not constitute matters "occurring before the grand jury" if the parallel investigation was truly independent of the grand jury proceedings. *Catania, supra; Anaya v. United States,* 815 F.2d 1373 (10th Cir.1987).

In *Catania,* the United States Attorney's Office and the Federal Bureau of Investigation conducted an investigation into possible voter fraud. A federal grand jury was convened, but no indictment resulted. Afterwards, the United States Attorney sought authorization, pursuant to a grand jury request, to make available to a state prosecuting attorney information that had been uncovered in the investigation. The information in question had been developed by FBI agents and had not been generated by the grand jury. The district court found that the materials "were the product of an FBI investigation, were not generated by the grand jury ...," and, therefore, granted the government permission to release the information. *Catania,* 682 F.2d at 64. The Third Circuit affirmed, stating that

> "disclosure of information obtained from a source independent of the grand jury proceeding, such as a prior government investigation, does not violate Rule 6(e)." The information developed by the FBI, although perhaps developed with an eye toward ultimate use in a grand jury proceeding, exists apart from and was developed independently of grand jury processes.

*Catania,* 682 F.2d at 64 (*quoting In re Grand Jury Investigation,* 610 F.2d 202, 217 (5th Cir.1980)) (citation omitted).

In *Anaya,* the Tenth Circuit reviewed a ruling by the district court that investigative information uncovered by agents of the FBI and made available to agents of the IRS was not grand jury information protected by Rule 6(e). During the course of the FBI investigation, matters relating to the target of the investigation were brought to the attention of the federal grand jury. FBI agents later made some of the information available to IRS agents for assistance in their independent tax investigation. The taxpayers, moving for relief under Rule 6(e), argued that although none of the material given to the IRS by the FBI was presented to the grand jury "[it] was so closely related to what *was* presented that it must fall within the shadow of 6(e)." *Id.* at 1379 (emphasis in original). Further, the taxpayers contended that disclosure of any information which would reveal the identities of witnesses, the substance of their testimony, the strategy of the investigations, and the deliberations of the grand jury would violate the rule. The Tenth Circuit disagreed, holding that

> revelation of information that has not been submitted to the grand jury does not vitiate those protections for the simple reason that the information was not part of what transpired in the grand jury room.

> . . . . .

> The IRS was in pursuit of a legitimate investigation, and revelation of information learned by other governmental agencies in a parallel investigation without disclosure of what had been submitted to the grand jury was not improper.

*Id.* at 1379–80 (citations omitted); *see also In re Subpoena to Testify Before Grand Jury,* 864 F.2d 1559, 1564 (11th Cir.1989).

Appellants here, however, urge that the records from cemeteries A and B were not obtained independently of the grand jury investigation. They asserted below and reiterate on appeal that the search warrant was simply a contrivance by the IRS to obtain the documents to further the grand jury investigation while circumventing Rule 6(e)(2) restrictions so that it could make the documents available for structuring civil tax audits of the grand jury targets. The government, with equal force, denies such villainous motive. The government also insists that, as long as a search warrant is served before a grand jury subpoena, forthcoming records and materials must be considered as derived independently of the grand jury process.

The instant case presents a closer question than those presented in *Anaya* and

*Catania.* However, reviewing the totality of the circumstances, we are ultimately persuaded that the same result should obtain. We reach this conclusion even though we are not persuaded by the government's argument that service of the search warrants before service of the grand jury subpoenas obviates any further inquiry.[9] The government's view, which the district court apparently adopted, is that such temporal consideration alone insulates the material obtained by the search warrant from Rule 6(e)(2) requirements because the material *ipso facto* takes on characteristics of information obtained independently of the grand jury. We think not. Easily visualized are circumstances where a government investigatory agent may, in pursuing an investigation, as here, become an agent of the grand jury. In such scenarios, sequence of service would make little difference if search warrants and grand jury subpoenas were used indiscriminately to obtain the targeted information. Therefore, we would caution investigatory agencies that the procedures such as those utilized in this case might, under slightly varying circumstances, jeopardize an entire investigation.

However, we are persuaded that the initial IRS investigation and the grand jury investigation were not indiscriminately merged but that the initial IRS investigation was conceived and initiated without any connection to a grand jury proceeding. The investigation, ongoing from June until the latter part of September, included the debriefing of informants and surveillance on the targeted residence, and culminated in the application for the search warrant supported by two affidavits detailing the investigation which was either earlier than or apart from the grand jury proceedings.

▮ As we have stated, the protective purposes of Rule 6(e) are many, but they coalesce to protect the integrity of the grand jury process by shielding witnesses and erroneously accused citizens as well as guarding against the compromising of le-gitimate prosecutorial objectives. The Supreme Court in *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), has instructed that revealing grand jury material to civil agents of the IRS for use in auditing violates these purposes. The Court in *Baggot* held that the information-gathering authority of the grand jury cannot be utilized to obtain evidence or information merely for use in civil proceedings. Here, in our view, however, the records of A and B were obtained as a result of an IRS investigation that was essentially independent of the grand jury proceedings. Moreover, there is no question but that materials obtained by grand jury subpoenas were carefully denied to IRS civil agents. Therefore, while we do not agree with the district court that the sequence of service of a search warrant and of a grand jury subpoena is necessarily determinative of the question of whether the search warrant is a *de facto* grand jury process, we agree in the discrete circumstances of this case with its conclusion that the search warrant was not a part of the grand jury process. The materials obtained pursuant to it therefore were not subject to Rule 6(e) restrictions.

## IV. The 1988 Subpoena

▮ The final issue we consider is that raised by the parent corporation contending that the district court erred in refusing to quash the 1988 grand jury subpoena issued to it and in holding it in contempt for failing to produce its records. The parent corporation advances arguments similar to those advanced in the search warrant context. In addition to reiterating the Rule 6(e)(2) contention, it asserts that the 1988 subpoena failed to meet the prerequisites of Rule 17(c) of the Federal Rules of Criminal Procedure because it was not relevant to the grand jury investigation and did not define targeted documents with particularity, and that the request for documents spanned an unreasonable period of time. The parent corporation complains that the subpoena is misdirected as the underlying

---

**9.** The search warrants and subpoenas were served on the same day—the search warrants hours earlier than the subpoenas.

investigation is concerned primarily with individuals employed by its subsidiaries, that the subpoena of its records was unreasonable in scope and that to the extent it calls for the records of "all subsidiaries" is overbroad on its face. Again, we disagree.

■■■ A presumption of "regularity" accompanies a *subpoena duces tecum*. *See Beverly v. United States*, 468 F.2d 732, 743 (5th Cir.1972). Additionally, we are mindful of the admonition that a court should not intervene in the grand jury process absent a "compelling justification." *United States v. (Under Seal)*, 714 F.2d 347, 350 (4th Cir.), *cert. dismissed sub nom. Doe v. United States*, 464 U.S. 978, 104 S.Ct. 1019, 78 L.Ed.2d 354 (1983). The grand jury subpoena, dated December 6, 1988, listed 16 categories of books and records of the parent corporation and all subsidiaries for the period January 1, 1982, through January 31, 1988.[10] Our examination of the items demanded in the subpoena does not reflect the kind of abuse which must be demonstrated in order to overcome the presumption of regularity and for a target of a grand jury subpoena to succeed on a motion to quash. *See United States v. Gurule*, 437 F.2d 239, 241 (10th Cir. 1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971). The parent corporation overlooks the critical fact that it is a target of investigation and alleged to be involved with most, if not all, of the suspected individual employees. The same consideration leads us to conclude that the naming of all the subsidiaries in this instance is likewise not abusive.

In view of the above, the judgment of the district court is affirmed.

AFFIRMED

---

**10.** At the corporation's request, the Assistant United States Attorney agreed to condense the period to that of January 1, 1983, through January 31, 1987.