# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

§
§
§
In re Grand Jury Investigation     §     Misc. No. 09-39 (RCL)
§
§     **FILED**
§
    **JUL 27 2009**

**ORDER**     NANCY MAYER WHITTINGTON, CLERK
    U.S. DISTRICT COURT

The Court's June 10th memorandum and order in this matter, which was previously sealed, is being released in redacted form for the benefit of the parties and the public. Some information in the opinion has been redacted as it is secret under Federal Rule of Criminal Procedure 6(e). The remainder of the opinion is not protected by Rule 6(e). Accordingly, it is hereby ordered that the redacted opinion attached hereto be unsealed and placed on the public record.

**SO ORDERED** this 27th day of July 2009.


ROYCE C. LAMBERTH
Chief Judge
United States District Court

**FILED**

JUN 1 0 2009

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

§
§
§
In re Grand Jury Investigation    §    Misc. No. 09-39 (RCL)
§
§    UNDER SEAL
§

## MEMORANDUM AND ORDER

The District of Columbia has requested that this Court order the release of the Metropolitan Police Department's final Force Investigation Team ("FIT") report and its attachments, both of which contain information obtained by a grand jury investigation into the shooting death of DeOnte Rawlings. *Motion for an Order Authorizing the Disclosure of Grand Jury Material* [1], at 1 [hereinafter *Motion*]. The District has also requested that this Court authorize Metropolitan Police Department ("MPD") Sergeant Ralph Wax, who assisted the grand jury investigation and authored the FIT report, to testify about his role in the grand jury investigation. *Id.* The District contends that it needs this information to help mount its defense in a wrongful death lawsuit brought by DeOnte Rawlings's family. Having considered the District's motion, the opposition by the United States, and the replies thereto, as well as having held a hearing on the issue, the District's motion is denied for the reasons set forth below.

## I. BACKGROUND

DeOnte Rawlings was shot and killed by an off-duty MPD officer, James Haskel, on September 17, 2007. *Government's Opposition to Motion for an Order Authorizing Disclosure of Grand Jury Material* [5], at 2 [hereinafter *Gov't Opposition*]. By September 19, 2007, the United States Attorney's Office for the District of Columbia ("USAO"), the FBI, and MPD agreed that a grand jury investigation into the shooting would be conducted. *Id.* On September 20, 2007, the District presented a preliminary FIT report to the USAO,[1] and the grand jury began its investigation on September 25, 2007. *Id.* Rawlings's parents filed suit against the District and Officers Haskel and Anthony Clay on October 23, 2007. After several months of investigation, the grand jury declined to return an indictment against the officers on May 1, 2008.

After the grand jury investigation concluded, MPD conducted an administrative review of the shooting. As part of the administrative review, Sgt. Wax authored a final FIT report, using information largely obtained by the grand jury investigation. *Id.* at 3-4. Among other things, the report contained summaries of witness statements obtained by the grand jury investigation, which are secret under Federal Rule of Criminal Procedure 6(e). The report also included information obtained prior to the institution of the grand jury

---

[1] Because this preliminary FIT report was produced independently of the grand jury investigation, it may be produced without violating Rule 6(e).

investigation and from independent, unrelated investigations, which is not subject to Rule 6(e).

While the use of information obtained by the grand jury in the FIT report was itself a violation of Rule 6(e), the violation was compounded as the FIT report was circulated to the MPD officers conducting the administrative review as well as the Office of the Attorney General for District of Columbia ("OAG"), which was conducting the District's defense in the civil suit. Once the USAO became aware of the distribution of the FIT report, it notified this Court and took action to secure the copies of the report that had been distributed. Afterwards the USAO provided the OAG with a redacted copy of the FIT report, which was then produced in the civil suit. The District now asks that this Court allow disclosure of the final, unredacted FIT report for its use in the civil suit.

## II. LEGAL STANDARDS

Federal Rule of Criminal Procedure 6(e) governs the secrecy of grand jury proceedings and the standards for disclosure of such information. The Supreme Court has consistently recognized the importance of secrecy to the proper functioning of the grand jury. *See Douglas Oil Co. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958)). The protection afforded by Rule 6(e) is "necessarily broad." *Fund for Constitutional Gov't v. Nat'l Archives and Record Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)). It covers "not only the direct revelation of grand jury

3

transcripts, but also disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations, or questions of the jurors, and the like.'" *Id.*

And while matters before the grand jury are generally secret, several narrow exceptions to this rule exist. *See In re Sealed Case*, 250 F.3d 764, 769 (D.C. Cir. 2001) (citing *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425-427 (1983)) (stating exceptions to Rule 6(e) are to be narrowly construed). Rule 6(e)(3)(E)(i) allows a court to disclose such information in connection with a judicial proceeding should it choose to and subject to any conditions that it imposes.

In order to obtain disclosure under Rule 6(e)(3)(E)(i) a party must show a particularized need for the sought-after material. *In re Sealed Case*, 250 F.3d 764, 771 (D.C. Cir. 2001) (citing *Douglas Oil*, 441 U.S. at 222). This showing can be made if the movant establishes (1) that the material is needed to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that the request is structured to cover only the material needed. *Douglas Oil*, 441 U.S. at 222. This showing must be made even when the grand jury whose materials are sought has concluded its term, for a court must "consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. . . . Thus, the interests in grand jury secrecy, although reduced, are not eliminated

4

merely because the grand jury has ended its activities." *Id.* Ultimately, the decision to disclose grand jury materials is left to the substantial discretion of the district court. *Id.* at 223; *see also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959).

## III. FIT REPORT

### A. Possible Injustice

The District argues that it needs access to the unredacted final FIT report so that it may "defend itself" in the Rawlings's lawsuit. *Motion* at 5. In particular, it seeks access to "witnesses who reportedly observed the incident between the officers and DeOnte Rawlings."[2] *Id.* at 6. The District also seeks to have the author of the FIT report, Sgt. Wax, testify as to its contents.[3]

The District expresses a particular interest in a statement from "Civilian Witness # 1."[4] *Motion* at 6. Civilian Witness # 1 identified two sources of gunfire the night of the shooting, a fact which was left unredacted in the report provided by the United States because it was obtained from a source independent

---

[2] In its original motion the District sought the identities and statements of several MPD officers involved in the investigation, *Motion* at 5, however, as the District acknowledged that it had independent knowledge of these officers' identities, it dropped its request for disclosure of these officers' statements in its reply, *Reply* at 1.

[3] Sgt. Wax is bound to secrecy as disclosure of grand jury information was made to him under Rule 6(e)(3)(A)(ii). *See* FED. R. CRIM. P. 6(e)(2)(B)(vii).

[4] It is unclear from the briefs which witnesses the District seeks access to testified before the grand jury or merely provided statements to investigators acting on behalf of the grand jury. Whether or not they ultimately testified is immaterial to this Court's consideration of disclosure because the statements of the witnesses given during the grand jury investigation, and summaries of those statements like those in the FIT report, are still protected by Rule 6(e). *In re Grand Jury Investigation*, 697 F.2d 511, 512 (3d Cir. 1982); *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1097 (7th Cir. 1992).

of the grand jury investigation. *Id.* Although the District says that it does not who Civilian Witness # 1 is apart from the grand jury investigation, *id.*, the United States has said Civilian Witness # 1 was interviewed by MPD officers the night of the shooting, that is, before the grand jury even began its investigation. *Gov't Opposition* at 7-8.

The District does not state why it needs disclosure of the testimony of Civilian Witnesses 2 and 3. Should it seek such information, the United States points out that Civilian Witness # 3 was interviewed the night of the shooting by MPD, which was before the grand jury investigation began. *Id.* at 8. Since his identity is known to the District apart from the grand jury investigation, he could be interviewed and deposed. Civilian Witness #2 was arrested on an unrelated matter and volunteered information about the Rawlings shooting to MPD officers who were not involved in the grand jury investigation. *Id.* Only afterwards was he interviewed by the officers assisting the grand jury investigation. *Id.* So Civilian Witness # 2 also could be interviewed or deposed by the District since his identity is likewise known to them apart from the grand jury investigation.

The District replies that Sgt. Wax was advised that the identity of these three witnesses were subject to Rule 6(e), and as such he could not identify them at his deposition. *Reply* [8], at 2. ██████████████████████ ████████████████████████████████████ ███████████████████████████ however, information developed outside and independently of the grand jury investigation is

6

not subject to Rule 6(e). *In re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990); *Wash. Post Co. v. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988); *In re Grand Jury Investigation*, 610 F.2d 202, 217 (5th Cir. 1980).

As Civilian Witness # 1 and # 3 were first interviewed eight days before the grand jury investigation began, those interviews are not protected by Rule 6(e). And although Civilian Witness # 2 was interviewed after the grand jury investigation began, he volunteered information about the shooting to MPD officers who were conducting an investigation independent of the grand jury. Based on these independent sources of information, the District can contact any one of these witnesses and interview or depose them as part of their preparation in the civil suit. The District can reveal that these witnesses were interviewed by the police, *independent of the grand jury's investigation*, without violating Rule 6(e),

And they can produce any documents related to those independently conducted interviews if they have been sought in discovery, aside from the redacted material in the FIT report itself. The District is even free to ask the witnesses themselves if they testified before the grand jury.

[REDACTED]

*See* FED. R. CRIM. P. 6(e)(2)(A) ("No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)."); *see also Butterworth v. Smith*, 494 U.S. 624, 635 (1990); FED. R. CRIM. P. 6(e) advisory committee's note ("The rule does not impose any obligation of secrecy on witnesses").

Furthermore, the District has not yet interviewed or deposed these witnesses in the civil suit, nor attempted to, probably due to their misapprehension that doing so would violate Rule 6(e). Many courts have held that there is no showing of particularized need for grand jury information where the same information could be obtained through normal means of discovery. *See Sells Eng'g*, 463 U.S. at 431; *United States v. Procter & Gamble Co.*, 356 U.S. 681, 682 (1958); *see also FDIC v. Ernst & Whitney*, 921 F.2d 83, 86-87 (6th Cir. 1990) ("The fact that the grand jury documents are relevant or that production of them . . . would expedite civil discovery or reduce expenses for the parties is insufficient to show particularized need when the evidence can be obtained through ordinary discovery, *i.e.*, subpoenaing the documents from other sources, or pursuing other routine avenues of investigation."); *Cullen v. Margiotta*, 811 F.2d 698, 715 (2d Cir. 1987); *In re Sealed Case*, 801 F.2d 1379, 1382 (D.C. Cir. 1986) (stating a particularized need could be shown where a party demonstrated "an inability to obtain through ordinary processes, timely and diligently pursued,

[REDACTED]

8

the particular documents, or the particular category of documents, requested from the grand jury."). However, the Supreme Court has also said that the fact that information is also available through civil discovery is not a *per se* bar to disclosure. *United States v. John Doe, Inc. I*, 481 U.S. 101, 116 (1987); *see also In re Grand Jury Investigation*, 55 F.3d 350, 354 (8th Cir. 1995). Nonetheless, the availability of information through alternative sources, like discovery, is an important factor that may properly be considered by a court deciding whether to order disclosure. *John Doe, Inc. I*, 481 U.S. at 116.

Here, such availability weighs against disclosure. Given that the District has not attempted to notice depositions of Civilian Witnesses 1-3—even though their identities, as established independently of the grand jury investigation, are known to the District—they have not demonstrated a particularized need for disclosing the portions of the FIT report protected by Rule 6(e). However, if after diligently pursuing the information the District is still unable to mount its defense, they are free to raise the issue again. *See In re Sealed Case*, 801 F.2d at 1382.

Unlike Civilian Witnesses 1-3, the identities of witnesses 5, 6, 7, 8, 9, 10, 11, 12, and 14[6] are not known to the District independently of the grand jury investigation. As such the case that these witnesses' identities could be ascertained through civil discovery is more tenuous. It is possible though that interviews or depositions may lead the District to these witnesses and the

---

[6] The statement of Civilian Witness # 13, which was taken on September 17, 2007 is not redacted and therefore not at issue. Furthermore, as it was taken prior to the institution of the grand jury's investigation it is not subject to Rule 6(e).

9

information regarding the shooting they possess (indeed, some may have been deposed already). However, disclosure as to these witnesses will not aid the District's defense, so there is no compelling need for disclosure. After review of the unredacted FIT report, which was submitted *ex parte* by the United States, the information in the statements of witnesses 5, 6, 7, 8, 9, 10, 11, 12, and 14 ███████ ████████████████████████████████████ Nor do any offer information that would be material to the District's defense. Accordingly, no injustice would be done were the material not disclosed and no compelling purpose would be served if it were.

### B. Need for disclosure as against the need for continued secrecy

The Supreme Court has recognized five distinct interests in protecting the secrecy of grand jury proceedings:

> (1) To prevent the flight of those whose indictment may be contemplated; (2) to ensure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trail of those indicted; (4) to encourage the free disclosure of information by those who have information regarding the investigation; (5) to protect the reputation of those investigated who are not indicted.

*Procter & Gamble*, 356 U.S. at 681 n.6. These reasons, however, are not generally implicated after a grand jury has concluded its investigation. 1 CHARLES ALAN WRIGHT & ANDREW D. LEIPOLD, FEDERAL PRACTICE AND PROCEDURE § 106 (4th ed. 2008) (citing *Butterworth*, 494 U.S. at 632-33 (1990); *In re United States*, 441 F.3d 44, 61 (1st Cir. 2006)). And though secrecy concerns are

lessened, some such interests nonetheless remain after the grand jury has concluded its investigation. *Douglas Oil*, 441 U.S. at 222. The primary remaining secrecy interests are in protecting the identity of witnesses who testified before the grand jury and in ensuring cooperation with future grand jury investigations. *Id.*

In its reply, the District argues that the investigation into Rawlings's shooting created animosity towards law enforcement generally and MPD particularly in the community where Rawlings lived. *Reply* at 3. As such, the District believes that witnesses will likely not cooperate with its investigation for the civil lawsuit. *Id.* But this concern is hypothetical regarding those witnesses whose identities the District knows, and the District has pointed to no instance where it has not received the cooperation of a witness or potential witness in the civil suit.

The United States also recognizes that many witnesses were concerned about their role in assisting the investigation. *Gov't Opposition* at 10. Because of such concerns the United States assured witnesses that their identities and cooperation with the grand jury's investigation would remain confidential. *Id.* Ultimately, such reluctant cooperation weighs against disclosure, as the Court must consider how disclosure would affect the functioning of future grand juries. *See Douglas Oil*, 441 U.S. at 222. Disclosure of grand jury materials from already reluctant witnesses might chill cooperation with future grand jury investigations. *See Butterworth*, 494 U.S. at 630; *Illinois v. Abbott & Assoc.*, 460 U.S. 556, 567 n.11 (1983); *Pakistan Int'l Airlines Corp. v. McDonnell Douglas Corp.*, 94 F.R.D.

11

566, 568 (D.D.C. 1982). Such cooperation would be further eroded if the United States were seen as having reneged on its promise of confidentiality in exchange for cooperation. *See Cullen*, 811 F.2d at 715 (holding that disclosure of grand jury information to expedite discovery was not warranted especially in light of the government's promises that witnesses' identities would remain confidential). Given that the District's concern about witness cooperation is at most equal to the Court's concern regarding witness cooperation with future grand jury investigations, it seems that the District has failed to meet its burden to show that the need for disclosure is *greater than* the need for continued secrecy.

## C. Properly Structured Request

The last prong of the *Douglas Oil* test requires that the District show its request for disclosure is narrowly tailored for only those materials it needs. *Douglas Oil*, 441 U.S. at 222. In its reply the District states that disclosure of the FIT report will allow it to focus on only those witnesses who have relevant information, *Reply* at 3, which is an admission in itself that some of the materials the District seeks may be of no value to their lawsuit at all, and as such are materials for which the District has no particularized need. This prong presents somewhat of a Catch-22, as it is difficult to narrowly tailor a request for information you don't know exists. Even still, the District has not provided the Court with the a description of the information it believes it needs for its defense other than to say it wants information about "witnesses who reportedly observed

12

the incident between the officers and DeOnte Rawlings."[7] *Motion* at 6. The Court's *in camera* review of the FIT report narrowed those witnesses who satisfied the District's request to just a few, and, as discussed above, other prongs of the *Douglas Oil* test demonstrate that disclosure of their statements is not warranted. With regard to the remaining information in the FIT report none of it is about witnesses who reportedly observed the shooting and, much, if not all of it, does not seem relevant to the District's defense. The request as it is written, which seeks wholesale disclosure of the FIT report, is not narrowly tailored and until a more particular request implicates information in the FIT report, the District has failed to satisfy the final prong of the test for disclosure. *Douglas Oil*, 441 U.S. at 222.

## IV. PHOTOGRAPHS

The District also seeks disclosure of photographs of Officer Haskel's SUV, which were attached to the FIT report. *See Motion* at 6-7. Presumably these photographs were presented to the grand jury. But simply because a document has been presented to the grand jury does not bring it within the scope of Rule 6(e). *Dresser Indus.*, 628 F.2d at 1382; *In re Grand Jury Impanelled Oct. 2, 1978*, 510 F. Supp. 112, 115 (D.D.C. 1981). Additionally documents produced independently of the grand jury's investigation are not subject to Rule 6(e). *In re*

---

[7] In its original motion the District sought the identities and statements of several MPD officers involved in the investigation, *Motion* at 5, however, as the District acknowledged that it had independent knowledge of these officers' identities, it dropped its request for disclosure of these officers' statements in its reply, *Reply* at 1.

*Grand Jury Subpoena*, 920 F.2d at 241; *Wash. Post Co.*, 863 F.2d at 100; *In re Grand Jury Investigation*, 610 F.2d at 217 ("[T]he disclosure of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation, does not violate Rule 6(e)."). Rule 6(e) applies only where the revelation of such independently produced documents or information, which were then presented to the grand jury, would tend to reveal the inner workings of the grand jury. *Wash. Post Co.*, 863 F.2d at 100.

Here the photographs the District seeks to produce were taken on September 17, 2007, eight days before the grand jury's investigation began. Furthermore, the photographs themselves, which depict a bullet hole in Officer Haskell's SUV, do not reveal the inner workings of the grand jury. Because the photographs were produced independently of the grand jury's investigation and do not reveal the inner workings of the grand jury they are not protected by Rule 6(e) and may be produced by the District, if they are within its possession. *Id.*

## V. CONCLUSION

Given that the District has failed to meet its burden on each of the three components of the *Douglas Oil* test, the Court finds the final, unredacted FIT report shall not be disclosed, nor shall Sgt. Wax be allowed to testify regarding its contends, and the District's motion is DENIED. However, should the District be unable to mount its defense without this information (after attempting to diligently obtain it or other useful information through normal discovery), the Court would be willing to reconsider the issue of disclosure in light of those changed

14

circumstances. *See In re Corrugated Container Antitrust Litig.*, 687 F.2d 52 (5th Cir. 1982) (allowing disclosure of grand jury transcripts where witnesses had difficulty in recalling events and invoked privileges during depositions). Disclosure of those materials not subject to Rule 6(e), such as the witness interviews from the night of the shooting, the September 20th preliminary FIT report, and the photographs of the bullet holes, which were all produced independently of the grand jury investigation, should be allowed as there is no justification for affording them a protection to which they are not entitled.

**SO ORDERED** this _10th_ day of June 2009.

Royce C. Lamberth
ROYCE C. LAMBERTH
Chief Judge
United States District Court

15