In re: **SEALED CASE NO. 99–3091**
(Office of Independent Counsel
Contempt Proceeding).

Nos. 99–3091, 99–3092.

United States Court of Appeals,
District of Columbia Circuit.

Decided Sept. 7, 1999.

Redacted Version Issued Sept. 13, 1999.

Rehearing En Banc Denied
Nov. 9, 1999.*

* Circuit Judges Wald, Sentelle and Garland did not participate in this matter.

Kenneth W. Starr, Independent Counsel, Paul Rosenzweig, Associate Independent Counsel, Donald T. Bucklin, and Andrew W. Cohen, for appellant the United States.

James K. Robinson, Assistant Attorney General, Michael E. Horowitz, Deputy Assistant Attorney General, and Lisa Simotas, Attorney, for the Attorney General.

David E. Kendall, Nicole K. Seligman, Alicia L. Marti, for William J. Clinton.

W. Neil Eggleston, Timothy K. Armstrong, for the Office of the President.

Before: WALD, SILBERMAN, and HENDERSON, Circuit Judges.

Opinion for the court filed PER CURIAM.

## ON A MOTION FOR SUMMARY REVERSAL OR STAY

PER CURIAM:

The Office of Independent Counsel (OIC) seeks summary reversal of the district court's order to show cause why OIC should not be held in contempt for violating the grand jury secrecy rule, and its

order appointing the United States Department of Justice as prosecutor of OIC in a criminal contempt proceeding. In the alternative, OIC seeks a stay of those orders pending appeal. We conclude we have jurisdiction to consider the interlocutory appeal and grant the motion for summary reversal.

## I.

On January 31, 1999, while the Senate was trying President William J. Clinton on articles of impeachment, the *New York Times* published a front page article captioned "Starr is Weighing Whether to Indict Sitting President." As is relevant here, the article reported:

> Inside the Independent Counsel's Office, a group of prosecutors believes that not long after the Senate trial concludes, Mr. Starr should ask the grand jury of 23 men and women hearing the case against Mr. Clinton to indict him on charges of perjury and obstruction of justice, the associates said. The group wants to charge Mr. Clinton with lying under oath in his Jones deposition in January 1998 and in his grand jury testimony in August, the associates added.

The next day, the Office of the President (the White House) and Mr. Clinton jointly filed in district court a motion for an order to show cause why OIC, or the individuals therein, should not be held in contempt for disclosing grand jury material in violation of Federal Rule of Criminal Procedure 6(e).[1] The White House and Mr. Clinton pointed to several excerpts from the article as evidence of OIC's violations of the grand jury secrecy rule.

OIC responded that the matters disclosed in the article merely rehashed old news reports and, in any event, did not fall within Rule 6(e)'s definition of "matters occurring before the grand jury." OIC

also submitted a declaration from Charles G. Bakaly, III, then-Counselor to the Independent Counsel, regarding his communications with the author of the article, Don Van Natta, Jr. Bakaly declared, among other things, that in his conversations with Van Natta about whether the Independent Counsel could indict the President while still in office, "I refused to confirm or comment on what Judge Starr or the OIC was thinking or doing." According to OIC, the declaration was for the purpose of demonstrating that even if the matters disclosed were grand jury material, OIC was not the source of the information in the article.

Notwithstanding the foregoing, Independent Counsel Kenneth W. Starr asked the Federal Bureau of Investigation to provide OIC assistance in conducting an internal leak investigation. The Department of Justice authorized the FBI to do so, and as a result of the investigation, [

][2] Consequently, OIC took administrative action against Bakaly and referred the matter to the Department of Justice for a criminal investigation and decision. OIC informed the district court of these developments, withdrew Bakaly's declaration, and abandoned its argument that OIC was not the source of the information disclosed in the *New York Times* article. Although OIC noted that "the article regrettably discloses sensitive and confidential internal OIC information," it continued to maintain that the information was not protected by Rule 6(e).

Troubled by these developments, the district court ordered Bakaly and OIC to show cause why they should not be held in civil contempt for a violation of Rule 6(e), concluding that the portion of the *New York Times* article quoted above revealed

---

1. That rule provides in relevant part: "[A]n attorney for the government ... shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules...."

2. Bold brackets signify sealed material.

grand jury material and constituted a *prima facie* violation of Rule 6(e). [

] The district court scheduled a consolidated show cause hearing, ordered the FBI and OIC to produce *in camera* all their relevant investigative reports, and required the FBI agents involved in the investigation to appear to testify. In accordance with this court's holding in *In re Sealed Case No. 98–3077*, 151 F.3d 1059, 1075–76 (D.C.Cir.1998), the district court ordered that the proceedings be closed and *ex parte*.

Convinced that the district court had misinterpreted this court's precedent, OIC and Bakaly asked the district court to certify for interlocutory appeal the question of the proper scope of Rule 6(e). The district court denied the request, referring only to its previous orders. In the meantime, DOJ entered an *appearance as counsel* for the potential FBI witnesses and sought a stay of the proceedings, including Bakaly's requests for discovery, pending the completion of its criminal investigation. The district court granted the stay, and on July 13, DOJ notified the district court by letter that it had completed its investigation. [

]

One day later, on July 14th, the district court *sua sponte* issued an order appointing DOJ to serve as prosecutor of the contempt charges against Bakaly *and OIC*. The district court explained its unexpected inclusion of OIC in DOJ's prosecution: "DOJ's letter only refers to the contempt charges lodged against Mr. Bakaly. However, the Court also needs to resolve the closely related allegations against the OIC. The Court believes that these matters are best resolved through a single contempt proceeding involving both Mr. Bakaly and the OIC." Although the district court de-

cided to afford Bakaly and OIC the protections of criminal law, it left open the possibility of civil, or a combination of civil and criminal, contempt sanctions. The district court also scheduled a pre-trial status conference for July 23.

Both DOJ and OIC responded immediately. In another letter to the court, DOJ asked the district court to withdraw its referral of OIC for prosecution. DOJ explained that based on its investigation, there was no factual basis for proceeding with a criminal contempt prosecution against the OIC in connection with the *New York Times* article. In addition, DOJ stated its view that the district court lacked authority to proceed against OIC for criminal contempt because Rule 6(e) only applies to individuals, OIC cannot be held vicariously liable for acts of its staff, and OIC is entitled to sovereign immunity.

OIC filed an emergency motion to vacate the district court's July 14 order, objecting to being named as a criminal defendant and to the entry of an order without affording the parties an opportunity to respond to DOJ's first letter. OIC also argued that there was no factual basis for the order, and raised numerous legal objections, including the argument that OIC is entitled to sovereign immunity from a criminal contempt proceeding.

Faced with having to enter an appearance as a criminal defendant at the status conference scheduled for July 23, and not having obtained a ruling from the district court on the emergency motion, on July 22, OIC noted an *ex parte* appeal from the district court's March 25 and July 14 orders and filed a motion for summary reversal or, in the alternative, stay pending appeal.[3] Because the criminal contempt proceedings were scheduled to commence immediately, we issued an administrative stay of those proceedings so that we would have sufficient opportunity to consider the

---

**3.** OIC also filed a petition for writ of mandamus in the event this court does not have

jurisdiction over the interlocutory appeal.

merits of the motion. To obtain an adversarial viewpoint on what we consider to be the dispositive issue in this case, we ordered Mr. Clinton and the White House, along with DOJ and OIC, to brief the question whether the alleged disclosures in the *New York Times* article relied upon by the district court in ordering a criminal contempt proceeding constitute a *prima facie* violation of Rule 6(e).

## II.

■ Before reaching that issue, we explain the basis of our jurisdiction over this interlocutory appeal. OIC claims that as a federal agency it is immune from criminal contempt charges. It is well established that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). Based on its claim of sovereign immunity, OIC contends that the district court's ruling is immediately appealable as a collateral order. We agree.

■ In order to qualify as a collateral order, the challenged order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Here, the district court failed to respond to OIC's motion to vacate and allowed to stand its order requiring OIC to appear as a criminal defendant at a status conference. Given these circumstances, we understand the district court to have conclusively rejected OIC's

claim of immunity. That determination resolves an important issue separate from the merits of the contempt charge.

■ As to the remaining factor, federal sovereign immunity is an immunity from suit, not simply a defense to liability on the merits. *See FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Consequently, the right to be free from the burdens of trial is effectively unreviewable on appeal from a final judgment. *See, e.g., Midland Asphalt Corp. v. United States*, 489 U.S. 794, 800–01, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) ("[D]eprivation of the right not to be tried satisfies the ... requirement of being 'effectively unreviewable on appeal from a final judgment.'"). Although the Seventh Circuit has concluded in a civil case that the federal government, as opposed to a state or foreign sovereign, does not have a right to an interlocutory appeal based on a claim of sovereign immunity, see *Pullman Constr. Indus., Inc. v. United States*, 23 F.3d 1166, 1169 (7th Cir.1994); *see also Alaska v. United States*, 64 F.3d 1352, 1355–57 (9th Cir.1995) (following *Pullman*), the Seventh Circuit based its decision in large part on the premise that the Administrative Procedure Act (APA), 5 U.S.C. § 702, waives federal sovereign immunity for equitable relief.[4] As discussed below, it is far from clear that Congress has waived federal sovereign immunity in the context of criminal contempt. We think that OIC's substantial claim of immunity from the proceedings ordered by the district court suffices to entitle OIC to an interlocutory appeal.

## III.

In deciding that the federal government was not entitled to an interlocutory appeal

---

4. That section of the APA provides in relevant part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than

money damages and stating a claim that an agency or an officer or employee thereof acted ... in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

based on sovereign immunity, the Seventh Circuit broadly stated: "Now that 5 U.S.C. § 702 exposes the United States to equitable relief,[5] it is difficult to speak of federal sovereign immunity as a 'right not to be sued.'" *Pullman*, 23 F.3d at 1168. It concluded that "[f]ederal sovereign immunity today is nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it...." *Id.* The Ninth Circuit agreed that "federal sovereign immunity [is] more accurately considered a right to *prevail* at trial, *i.e.*, a defense to payment of damages." *Alaska*, 64 F.3d at 1355 (emphasis in original).[6]

■ We rather doubt that federal sovereign immunity is so limited, especially in the unique circumstances presented here. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in [the] statutory text." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). We know of no statutory provision expressly waiving federal sovereign immunity from criminal contempt proceedings.

■ We need not decide this issue of first impression, however, because there is another ground upon which we can dispose of this case that does not raise constitutional concerns.[7] As we recently concluded, although a federal court generally must determine whether it has jurisdiction over a case before reaching its merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998), "a less than pure jurisdictional question, need not be decided before a merits question." *United States ex rel. Long v. SCS Business & Technical Inst., Inc.*, 173 F.3d 890, 894 (D.C.Cir.1999) (supplemental opinion) (Eleventh Amendment immunity issue need not be decided before merits); *accord Parella v. Retirement Bd. of the Rhode Island Employees' Retirement Sys.*, 173 F.3d 46 (1st Cir.1999); *but see United States ex rel. Foulds v. Texas Tech Univ.*, 171 F.3d 279 (5th Cir.1999); *Seaborn v. Florida Dep't of Corrections*, 143 F.3d 1405 (1st Cir.1998), *cert. denied*, ⸺ U.S. ⸺, 119 S.Ct. 1038, 143 L.Ed.2d 46 (1999). Federal sovereign immunity, like the state sovereign immunity at issue in *Long*, differs from the classic "jurisdictional" limitations of Article III in that immunity can be waived. *See FDIC v. Meyer*, 510 U.S. at 475, 114 S.Ct. 996 ("*Absent a waiver*, sovereign immunity shields the Federal Government and its agencies from suit.") (emphasis added); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) ("The [Eleventh] Amendment ... enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction."). Given the "quasi-jurisdictional or 'hybrid' status," *Long*, 173 F.3d at 893,

---

5. *But cf. Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 119 S.Ct. 687, 691, 142 L.Ed.2d 718 (1999) (Section 702 makes distinction between specific relief and substitute relief, not equitable and nonequitable categories of remedies).

6. There are cases suggesting otherwise. In the civil context, the Fifth Circuit has held that the United States is immune from suit under Rule 6(e), *see McQueen v. Bullock*, 907 F.2d 1544 (5th Cir.1990), and the Eighth Circuit has held that the United States has not waived sovereign immunity for civil contempt under 18 U.S.C. § 401, which gives the court power to punish contempt by fine or imprisonment, *see Coleman v. Espy*, 986 F.2d 1184 (8th Cir.1993). Neither of these cases, however, takes into account the waiver of immu-

nity in 5 U.S.C. § 702. *Cf. Armstrong v. Executive Office of the President*, 821 F.Supp. 761 (D.D.C.) (discussing waiver in 5 U.S.C. § 702, holding United States in civil contempt of court, and imposing coercive fines), *rev'd on other grounds*, 1 F.3d 1274 (D.C.Cir.1993).

7. We assume federal sovereign immunity "is derived from article III, section 2, of the Constitution," *Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240, 1248 (D.C.Cir.1987) (joint statement dissenting from the vacatur of orders and from the denials of rehearing en banc), although there is some debate over whether it is a constitutional doctrine and, if so, its source in the Constitution, *see* Scott C. Idleman, *The Demise of Hypothetical Jurisdiction in the Federal Courts*, 52 VAND. L.REV. 235, 349 n.354 (1999).

of federal sovereign immunity, we are not required to decide that issue before the merits. Moreover, taking pendent jurisdiction and disposing of this case on the merits has the added virtues of avoiding a constitutional issue of first impression, *see Rendall–Speranza v. Nassim*, 107 F.3d 913 (D.C.Cir.1997) (allowing interlocutory appeal based on foreign sovereign immunity claim, but declining to decide immunity issue, which was both difficult and implicated foreign relations), while providing much needed clarification on an important issue—that is, the proper scope of Rule 6(e)—that has arisen in this court on several occasions, and is likely to recur.

## IV.

■■■ Turning, then, to the merits of this case, we conclude that the disclosures made in the *New York Times* article do not constitute a *prima facie* violation of Rule 6(e). A *prima facie* violation based on a news report is established by showing that the report discloses "matters occurring before the grand jury" and indicates that sources of the information include government attorneys. *See Barry v. United States*, 865 F.2d 1317, 1321 (D.C.Cir. 1989). Because OIC has withdrawn its argument that none of its attorneys was the source of the disclosures in the *New York Times* article at issue here, the only remaining issue is whether those disclosures qualify as "matters occurring before the grand jury." Fed.R.Crim.P. 6(e)(2).[8]

The district court concluded that only one excerpt from the *New York Times* article constituted a *prima facie* violation of Rule 6(e). That excerpt, quoted in full *supra* at 998, disclosed the desire of some OIC prosecutors to seek, not long after the conclusion of the Senate trial, an indictment of Mr. Clinton on perjury and obstruction of justice charges, including lying under oath in his deposition in the Paula Jones matter and in his grand jury testi-

mony. These statements, according to the district court, reveal a specific time frame for seeking an indictment, the details of a likely indictment, and the direction a group of prosecutors within OIC believes the grand jury investigation should take. Not surprisingly, Mr. Clinton and the White House agree with the district court's expansive reading of Rule 6(e). OIC takes a narrow view of the Rule's coverage, arguing that matters occurring outside the physical presence of the grand jury are covered only if they reveal grand jury matters. DOJ generally supports OIC with respect to the Rule's coverage, but emphasizes the importance of the context and concreteness of disclosures.

The key to the district court's reasoning is its reliance on this court's definition of "matters occurring before the grand jury." In *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C.Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 60, 142 L.Ed.2d 47 (1998), we noted that this phrase encompasses "not only what has occurred and what is occurring, but also what is likely to occur," including "the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Id.* (internal quotation omitted). In the earlier contempt proceeding against Independent Counsel Starr, however, we cautioned the district court about "the problematic nature of applying so broad a definition, especially as it relates to the 'strategy or direction of the investigation,' to the inquiry as to whether a government attorney has made unauthorized disclosures." *In re Sealed Case No. 98–3077*, 151 F.3d at 1071 n. 12. Despite the seemingly broad nature of the statements in *Dow Jones*, we have never read Rule 6(e) to require that a "veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand

---

**8.** OIC contends that as an entity rather than an individual, it is not subject to Rule 6(e). It is unnecessary to decide this issue given our

conclusion that there is no *prima facie* violation of Rule 6(e).

jury." *Securities & Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.1980) (en banc). Indeed, we have said that "[t]he disclosure of information 'coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury' is not prohibited." *Senate of Puerto Rico v. United States Dep't of Justice,* 823 F.2d 574, 582 (D.C.Cir.1987)(*quoting Fund for Constitutional Gov't v. National Archives and Records Serv.,* 656 F.2d 856, 870 (D.C.Cir.1981)). Thus, the phrases "likely to occur" and "strategy and direction" must be read in light of the text of Rule 6(e)—which limits the Rule's coverage to "matters occurring before the grand jury"—as well as the purposes of the Rule.

> As we have recited on many occasions, Rule 6(e) ... protects several interests of the criminal justice system: "First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule."

*In re Sealed Case No. 98–3077,* 151 F.3d 1059, 1070 (D.C.Cir.1998) (*quoting Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 219, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979)); *see also Fund for Constitutional Gov't,* 656 F.2d at 869 (same). These purposes, as well as the text of the Rule itself, reflect the need to preserve the secrecy of the *grand jury* proceedings themselves. It is therefore necessary to differentiate between statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a *grand jury's* investigation, a distinction of the utmost significance upon which several circuits have already remarked. *See, e.g., United States v. Rioux,* 97 F.3d 648, 662 (2d Cir.1996) ("Most of the media surrounding the Rioux investigation ... discussed federal 'investigations,' without actually discussing matters before the grand jury."); *In re Grand Jury Subpoena,* 920 F.2d 235, 242 (4th Cir.1990) ("[I]nformation produced by criminal investigations paralleling grand jury investigations does not constitute matters 'occurring before the grand jury' if the parallel investigation was truly independent of the grand jury proceedings."); *Blalock v. United States,* 844 F.2d 1546, 1551 (11th Cir.1988) ("[T]he agents could not have violated Rule 6(e)(2) merely by allowing the Georgia Power investigators to be present during the questioning of *potential* grand jury witnesses.... To have violated Rule 6(e)(2) ... the agents must have disclosed to the Georgia Power investigators information revealing what had transpired, or will transpire, before the grand jury.") (emphasis added); *In re Grand Jury Investigation* ["*Lance*"], 610 F.2d 202, 217 (5th Cir. 1980) ("[T]he disclosure of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation, does not violate Rule 6(e).").

 Information actually presented to the grand jury is core Rule 6(e) material that is afforded the broadest protection from disclosure. Prosecutors' statements about their investigations, however, implicate the Rule only when they directly reveal grand jury matters. To be sure, we have recognized that Rule 6(e) would be easily evaded if a prosecutor could with impunity discuss with the press testimony about to be presented to a grand jury, so long as it had not yet occurred. Accordingly, we have read Rule 6(e) to cover

matters "likely to occur." And even a discussion of "strategy and direction of the investigation" could include references to not yet delivered but clearly anticipated testimony. *See Lance,* 610 F.2d at 216–17 and n. 4. But that does not mean that *any* discussion of an investigation is violative of Rule 6(e). Indeed, the district court's Local Rule 308(b)(2), which governs attorney conduct in grand jury matters, recognizes that prosecutors often have a legitimate interest in revealing aspects of their investigations "to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers, or otherwise aid in the investigation."

It may often be the case, however, that disclosures by the prosecution referencing its own investigation should not be made for tactical reasons, or are in fact prohibited by other Rules or ethical guidelines. For instance, prosecutors may be prohibited by internal guidelines, *see, e.g.,* United States Attorney Manual § 1–7.530, from discussing the strategy or direction of their investigation before an indictment is sought.[9] This would serve one of the same purposes as Rule 6(e): protecting the reputation of innocent suspects. But a court may not use Rule 6(e) to generally regulate prosecutorial statements to the press. The purpose of the Rule is only to protect the secrecy of grand jury proceedings.

Thus, internal deliberations of prosecutors that do not directly reveal grand jury proceedings are not Rule 6(e) material. As the Fifth Circuit stated in circumstances similar to those presented here,

[a] discussion of actions taken by government attorneys or officials—*e.g.,* a

recommendation by the Justice Department attorneys to department officials that an indictment be sought against an individual—does not reveal any information about matters occurring before the grand jury. Nor does a statement of opinion as to an individual's potential criminal liability violate the dictates of Rule 6(e). This is so even though the opinion might be based on knowledge of the grand jury proceedings, provided, of course, the statement does not reveal the grand jury information on which it is based.

*Lance,* 610 F.2d at 217; *accord United States v. Smith,* 787 F.2d 111, 115 (3d Cir.1986) ("We agree with the Fifth Circuit that a statement of opinion by a Justice Department attorney as to an individual's potential criminal liability does not violate the dictates of Rule 6(e)....."). It may be thought that when such deliberations include a discussion of whether an indictment should be sought, or whether a particular individual is potentially criminally liable, the deliberations have crossed into the realm of Rule 6(e) material. This ignores, however, the requirement that the matter occur before the grand jury. Where the reported deliberations do not reveal that an indictment *has been* sought or *will be* sought, ordinarily they will not reveal anything definite enough to come within the scope of Rule 6(e).

For these reasons, the disclosure that a group of OIC prosecutors "believe" that an indictment should be brought at the end of the impeachment proceedings does not on its face, or in the context of the article as a whole, violate Rule 6(e).[10] We acknowledge, as did OIC, that such statements are trou-

---

**9.** *But see* Eric H. Holder and Kevin A. Ohlson, *Dealing with the Media in High–Profile White Collar Cases: The Prosecutor's Dilemma,* in White Collar Crime, at B–1, B–1 to B–2 (1995) ("[I]n cases involving well-known people, the public has a right to be kept reasonably informed about what steps are being taken to pursue allegations of wrongdoing so that they can determine whether prosecutors are applying the law equally to all citizens. This point has become particularly pertinent

in recent years because powerful figures increasingly seem to characterize criminal investigations of their alleged illegal conduct as 'political witch hunts.' This type of epithet only serves to unfairly impugn the motives of prosecutors and to undermine our legal system, and should not go unanswered.").

**10.** Indeed, the article stated that Independent Counsel Starr had not himself made any decision on whether to bring an indictment.

bling, for they have the potential to damage the reputation of innocent suspects. But bare statements that some assistant prosecutors in OIC wish to seek an indictment do not implicate the grand jury; the prosecutors may not even be basing their opinion on information presented to a grand jury.

The fact that the disclosure also reveals a time period for seeking the indictment of "not long after the Senate trial concludes" does not in any way indicate what is "likely to occur" before the grand jury within the meaning of Rule 6(e). That disclosure reflects nothing more than a desire on the part of some OIC prosecutors to seek an indictment at that time, not a decision to do so. The general uncertainty as to whether an indictment would in fact be sought (according to the article, only some prosecutors in OIC thought one should be) leads us to conclude that this portion of the article did not reveal anything that was "occurring before the grand jury."

 Nor does it violate the Rule to state the general grounds for such an indictment—here, lying under oath in a deposition and before the grand jury—where no secret grand jury material is revealed. In ordinary circumstances, Rule 6(e) covers the disclosure of the names of grand jury witnesses. Therefore, the statement that members of OIC wished to seek an indictment based on Mr. Clinton's alleged perjury before a grand jury would ordinarily be Rule 6(e) material. In this case, however, we take judicial notice that the President's status as a witness before the grand jury was a matter of widespread public knowledge well before the *New York Times* article at issue in this case was written; the President himself went on national television the day of his testimony to reveal this fact. *Cf. Dow Jones*, 142 F.3d at 505 ("Carter's identity as a person subpoenaed to appear before the grand jury has [lost its character as 6(e) material] ... because Carter's attorney decided to reveal this fact to the public."). Where the general public is already aware of the information contained in the prosecutor's statement, there is no additional harm in the prosecutor referring to such information.[11] *See In Re North*, 16 F.3d 1234, 1245 (D.C.Cir.1994) ("There must come a time ... when information is sufficiently widely known that it has lost its character as Rule 6(e) material. The purpose in Rule 6(e) is to preserve secrecy. Information widely known is not secret."); *see also In re Petition of Craig*, 131 F.3d 99, 107 (2d Cir.1997) ("[T]he extent to which the grand jury material in a particular case has been made public is clearly relevant because even partial previous disclosure often undercuts many of the reasons for secrecy.").[12] Therefore, it cannot be said that OIC "disclosed" the name of a grand jury witness, in violation of Rule 6(e), by referring to the President's grand jury testimony.[13]

Similarly, it would ordinarily be a violation of Rule 6(e) to disclose that a grand jury is investigating a particular person. Thus, the statement that a grand jury is "hearing the case against Mr. Clinton"

---

**11.** The prosecutor must still be careful, of course, when making such statements not to reveal some aspect of the grand jury investigation which is *itself* still cloaked in secrecy.

**12.** We agree with DOJ that consideration of whether material presumptively within the scope of Rule 6(e) has lost its secrecy should be considered at the *prima facie* stage. Here, the question is easily answered by reference to matters of which the court may take judicial notice, therefore there is no need for OIC to be put to the burden and distraction of an evidentiary hearing to rebut the allegations of a Rule 6(e) violation. *See In re Sealed Case No. 98–3077*, 151 F.3d at 1075 (once *prima facie*

case established, government required to "come forward with evidence, in whatever form the district court requires (including affidavits, depositions, production of documents, or live testimony)").

**13.** Of course, a prosecutor is not free to leak grand jury material and then make a self serving claim that the matter is no longer secret. *Cf. In re North*, 16 F.3d 1234, 1245 (D.C.Cir.1994) ("We do not intend to formulate a rule that once a leak of Rule 6(e) material has occurred, government attorneys are free to ignore the pre-existing bond of secrecy.").

would be covered by Rule 6(e) if it were not for the fact that the *New York Times* article did not reveal any secret, for it was already common knowledge well before January 31, 1999, that a grand jury was investigating alleged perjury and obstruction of justice by the President. Once again, the President's appearance on national television confirmed as much.

## V.

In light of our conclusion that the excerpt from the *New York Times* article does not constitute a *prima facie* violation of Rule 6(e), we reverse and remand with instructions to dismiss the Rule 6(e) contempt proceedings against OIC. Because we have granted OIC's request for summary reversal, we dismiss as moot the alternative request for a stay, as well as the consolidated petition for mandamus. The administrative stay is lifted.