**In the Matter of the SEARCH OF 14416 CORAL GABLES WAY, NORTH PO- TOMAC, MARYLAND.**

**Case No. 10–4451–BPG.**

United States District Court, D. Maryland.

April 5, 2011.

Christine Manuelian, Office of the United States Attorney, Baltimore, MD, for Plaintiff.

## MEMORANDUM OPINION [1]

SUSAN K. GAUVEY, United States Magistrate Judge.

The Office of the U.S. Attorney submitted an application for search and seizure warrants and a motion to seal the search warrants and the supporting affidavit to the Honorable Beth P. Gesner in November of last year in the above case. The Court granted the motion and the search of the home at 14416 Coral Gables Way occurred shortly thereafter on November 30, 2011. Upon executing the search, the government provided Mr. Gurpreet Kohli with a receipt for the property taken by government agents, and a copy of the warrant and three unredacted attachments: Attachment A describing the residence to be searched; Attachment B outlining the property to be seized in support of the alleged violations of law; and Attachment D describing the methods to be used for searching computer-related items. (ECF No. 10, 1). The government did not furnish a copy of the application for the search warrants, the affidavit in support of the search warrants, or the motion to seal.

Attachment B stated that "the items to be seized ... constitute evidence, fruits and instrumentalities of: false statement in violation of 18 U.S.C. § 1001; obstructing an agency proceeding in violation of 18 U.S.C. § 1505; and attempted brokering of defense articles without a license in violation of 18 U.S.C. § 2278. The items to be seized included, inter alia, records

---

**1.** This opinion was originally filed April 5, 2011, but was not published pending the conclusion of the investigation in this case.

relating to transactions with the government of India, or its officials, foreign nationals, entities/businesses doing business with India ..." (ECF No. 3, 30 ¶ 1 and ¶ 4); and consulting or other professional relationships involving the Government of India or its officials, entities/businesses doing business in or with India, or foreign nationals doing business in or with India" (*Id.* at ¶ 5). The items to be seized also included documents relating to the business activities, *inter alia,* of NAVTEC and NAVTEC India and documents proprietary to Northrop Grumman and pertaining to Bharat Electronics, ECIL, DLRL and DRDO or any other Indian government or private entities.[2]

On February 11, 2011, Gurpreet Kohli, Navpreet Kohli and NAVTEC, LLC filed a motion to unseal affidavit in support of search warrant. (ECF No. 7).[3] The movants argued their entitlement to the contents of the search warrant affidavit unless the government's demonstrated that: (1) a compelling interest that the materials to be kept under seal and (2) there is no less restrictive means, such as redaction, available. (ECF No. 7, 2–4). Of particular concern was Mr. Gurpreet Kohli's employment at Northrop Grumman Corporation ("Northrop Grumman"). The motion asserted that he had been told by his employer "that he will lose his job because he cannot offer them any explanation to what this investigation relates, and why his security clearance was recently suspended." (ECF No. 7, 1–2). The government responded that the right under the Fourth Amendment to pre-indictment access to a search warrant is not absolute and may be weighed against the government's interest

in non-disclosure. (ECF No. 10, 4). The government also stated that Mr. Gurpreet Kohli had not provided any supporting factual basis for his assertion that his security clearance was suspended due to the government's execution of the search warrant, and that despite the suspension of his clearance, Mr. Kohli's employment at Northrop Grumman continued. (ECF No. 10, 2–3). In an *ex parte* letter dated March 4, 2011, the government informed the Court that, according to Northrop Grumman counsel, no adverse employment actions had been taken against Mr. Gurpreet Kohli at that time, but that Northrop Grumman had decided to restrict Mr. Kohli's foreign travel for the immediate future in order to avoid any potential issues for the company. (ECF No. 14, 1).

In support of its request for continued sealing of the entire search warrant affidavit and the warrants, the government submitted *ex parte* materials, including declarations by the special agent in charge of the investigation. At the request of the Court, an *ex parte* hearing was held on Friday, March 25, 2011 to further explore the government's bases for the continued sealing, with two special agents in attendance who provided additional testimony. Thereafter, at the Court's request, the government submitted additional *ex parte* materials. The Court was informed on March 25, 2011 that Mr. Kohli was suspended from his employment at Northrop Grumman, which suspension he believes is related to the government's investigation. (ECF No. 19).

For the reasons set forth below, the Court grants in part and denies in part the

**2.** ECIL is the Electronics Corporation of India, Ltd., affiliated with the government of India's Department of Atomic Energy. DLRL is the Defense Electronics Research Laboratory in Hyderbad, India. DRDO is the Defense Research Development Organization, which is

within the Ministry of Defense for the Government of India.

**3.** The motion was submitted to Judge Gesner, who asked that another judge decide the motion.

motion to unseal. The Court believes that the government has failed to demonstrate a compelling interest in the continued sealing of the affidavit, except as to the minimal redactions set out in the affidavit attached as Appendix A, which redactions shield certain information that might interfere markedly with the completion of the investigation if known to the movants. The government has indicated its inclination to appeal this decision if any parts of the affidavit are released beyond what the government now has conceded can be released, namely, paragraphs 1–7 and 39–44 (with the exception of certain limited information in paragraphs 2 and 42–44). The government's redacted affidavit attached as Appendix B. (ECF No. 16, 11). Accordingly, the Court orders the government to release the affidavit attached as Appendix A on April 5, 2011, unless an appeal is taken by that date.

### Discussion

■ The Fourth Circuit has held that the subject of a search warrant does have a pre-indictment right to examine the search warrant affidavit. *United States v. Oliver*, 208 F.3d 211, 2000 WL 263954, at *2 (4th Cir. Mar. 9, 2000) (stating that "a defendant is entitled under the Fourth Amendment to examine the affidavit that supports a warrant after the search has been conducted"); *see also In re Search Warrants Issued on Apr. 26, 2004*, 353 F.Supp.2d 584, 591 (D.Md.2004) ("Accordingly, this Court affirms Magistrate Judge Gauvey's recognition of a search subject's pre-indictment Fourth Amendment right to inspect the probable cause affidavit."); *In re Search of 8420 Ocean Gateway Easton, Md.*, 353 F.Supp.2d 577, 579 (D.Md. 2004) ("The Court finds that there is a Fourth Amendment constitutional right to examine the search warrant affidavit."). This right is not absolute, however, and may be overridden "where the Government demonstrates '(1) that a compelling governmental interest requires the materials to be kept under seal and (2) there is no less restrictive means, such as redaction, available.' " *Oliver*, 2000 WL 263954, at *2 (quoting *In re Search Warrants Issued Aug. 29, 1994*, 889 F.Supp. 296, 299 (S.D.Ohio 1995)); *see also In re Search Warrants Issued on Apr. 26, 2004*, 353 F.Supp.2d at 591 ("Moreover, this Court recognizes that this right is limited, and adopts the test articulated by the Fourth Circuit in the unpublished *Oliver* opinion."); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir.2005) (stating that access may be denied if sealing "is essential to preserve higher values and narrowly tailored to serve that interest"). The ultimate decision of whether to "seal or grant access to 'warrant papers is committed to the sound discretion of the judicial officer who issued the warrant.' " *Media*, 417 F.3d at 429 (quoting *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir.1989)).

■ A showing of a compelling interest sufficient to override the subject's Fourth Amendment right of access may, for example, be satisfied by an ongoing criminal investigation, a court-ordered wiretap that has yet to be terminated, information that could reveal the identity of confidential informants whose lives would be endangered, or matters occurring before the grand jury. *Media*, 417 F.3d at 430–31 (finding that a compelling interest was shown when, in preliminary stage of the investigation, there would be a potential negative impact if unproven criminal allegations were made public, possible negative impact on broader investigations in other districts, and presence of privacy interests in personal tax information of person being searched); *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F.Supp.2d 83,

91 (D.D.C.2008) (explaining that although promoting effective law enforcement by keeping the identity of informants secret is a compelling interest, that interest can be accomplished by redacting the identity and personal identifiers of the informant rather than sealing the entire affidavit); *Search Warrants Issued Aug. 29, 1994,* 889 F.Supp. at 299 (stating that a compelling interest was not shown when investigation was three years long, not part of some broader investigation involving other participants in other districts, did not contain wiretaps, and no informant's lives were endangered). However, the requirement of a compelling interest requires "[m]ore than a conclusory allegation of an ongoing investigation." *In re Up North Plastics, Inc.,* 940 F.Supp. 229, 233 (D.Minn.1996). Instead, the government is required to "make a specific factual showing of how its investigation will be compromised by the release of the affidavit to the person whose property was seized." *Id.; see also In re Searches and Seizures,* No. 08–SW–0361 DAD, 2008 WL 5411772, at *4 (E.D.Cal. Dec. 19, 2008) (finding that a specific factual basis was shown, but rejecting assertions that unsealing the affidavit would obstruct the investigation by revealing the government's theory of the case and direction of the investigation as nothing more than conclusory statements). In any event, the subject's Fourth Amendment right must only yield to the government's compelling interest for a reasonable period of time. *In re Searches and Seizures,* 2008 WL 5411772, at *5; *Up North,* 940 F.Supp. at 233.

As is typical, the affidavit here laid out a summary of the investigation and its findings, in an effort to persuade the reviewing judge that there is probable cause that three specific criminal statutes have been violated, and that the sought—for items will provide evidence of those crimes. Notably, much—indeed most—of the affidavit concerns events and transactions prior to 2010. Here, the government identified false statement (18 U.S.C. § 1001), obstructing an agency proceeding (18 U.S.C. § 1505), and attempted brokering of defense articles without a license (18 U.S.C. § 2278). Originally, the government sought to seal the entire affidavit. At the Court's request, the government re-reviewed the subject affidavit. (ECF No. 9; ECF No. 15). The government identified a few portions that could be unsealed and provided an annotated affidavit identifying those. (ECF No. 16). Government's proposed redacted affidavit is attached as Appendix B.

In this case, the government asserts a compelling interest in the continued sealing of the affidavit on the basis that unsealing would (1) reveal an ongoing criminal investigation; (2) reveal ongoing independent investigations of the Office of Personnel Management ("OPM") and Northrop Grumman; (3) undermine the secrecy of grand jury materials; and (4) potentially endanger a cooperating witness. The Court shall discuss each basis in turn.

### Ongoing Investigation

After re-reviewing the affidavit at the Court's request, the government continues to seek to maintain nearly the entire affidavit under seal for the principal reason that release of the information would interfere with the government's ongoing investigation. The government offers two bases for its sealing request: (1) the potential for witness and evidence tampering and influencing; and (2) the chilling effect upon the government's ability to discover the extent to which counter-intelligence and national security interests have been compromised.

 With regard to the potential for the tampering with evidence and witnesses,

the government states that, upon revelation of the information contained in the affidavit, Gurpreet and Navpreet Kohli may attempt to unduly influence witnesses and fabricate, destroy or alter evidence in order to conceal the true extent of their activities. (ECF No. 16, 2–3, 6–10). In support of this proposition, the government asserts that it is not uncommon for individuals engaged in criminal activities to attempt to derail the government's investigation by covering up their illegal activities. (*Id.* at 6). Even assuming the truth of this general assertion, however, the government has provided no evidence specific to this case beyond a general concern that could justify the sealing of affidavits in every criminal investigation.

The government asserts that following the execution of the search warrant on his home, Mr. Gurpreet Kohli contacted a NAVTEC customer, and thus a potential witness, to inquire about the witness' knowledge of the criminal investigation. In the government's view, this incident suggests an unacceptable risk of witness tampering. The Court disagrees. The special agent who learned of the call from the NAVTEC customer did not characterize the call as threatening or demanding— merely inquiring, although he directed the contact to a new email address. The Court does not view this one call by Mr. Kohli as an attempt to tamper with or influence a potential witness. It is more likely that Mr. Kohli, after being the subject of a search warrant at his private residence, did what any rational person would do; he attempted to find out why he was the center of a federal government investigation.

Mr. Kohli knows generally the focus of the government's investigation as revealed in the warrant and attachments provided to him. *See supra.* Movants know that they are under investigation for improper brokering of defense articles and services. Their two NAVTEC business entities are specifically named and specific Indian government agencies and affiliates are identified. And, of course, Messrs Kohlis are well aware of their own activities. It is therefore likely that Gurpreet Kohli is already aware of potential sources of information and evidence which could aid the government in their investigation. *See Search of 8420 Ocean Gateway Easton, Md.,* 353 F.Supp.2d at 582 (explaining that there is less of interest in sealing the affidavit when the subject likely knows the sources of information but has not taken any inappropriate action regarding those sources). Moreover, Gurpreet Kohli has known this information since late November—some four months ago. Yet, the government can cite only a single phone call to support the specter of Mr. Kohli's future tampering with witnesses. This Court does not view a single attempt at discovering the explanation for a life-altering event to be evidence of Mr. Kohli's likelihood to tamper with or influence potential witnesses.

The government also asserts that because Mr. Kohli is still employed in a position of trust at Northrop Grumman, Mr. Kohli will have the opportunity to tamper with or destroy evidence yet to be provided to the government. (ECF No. 16, 5). However, the government has not provided any factual evidence indicating that, even with knowledge of the alleged violation of defense article brokering and the items to be seized detailed in Attachment B to the search warrant, Mr. Kohli has attempted to use his position at Northrop Grumman to tamper with or destroy potential evidence. Furthermore, Northrop Grumman had already curtailed Mr. Kohli's foreign travel before the government submitted its response to the motion to unseal. The Court finds it highly unlikely that Northrop Grumman would have

granted Mr. Kohli access to sensitive information which would present him with the opportunity to tamper with or destroy potential evidence after suspending his travel. Additionally and critically, as of March 25, 2011, Mr. Kohli was suspended from his position at Northrop Grumman, eliminating any potential opportunity for Mr. Kohli to use his position to destroy or tamper with evidence.

This Court also notes that the current investigation is not in its beginning stages, nor is there any assertion that this investigation is part of a larger matter. *Cf. Media*, 417 F.3d at 430–31 (finding a compelling interest where there would be a potential negative impact if unproven criminal allegations were made public at preliminary stage of investigation, including a negative impact on broader investigations in other districts); *Search Warrants Issued Aug. 29, 1994*, 889 F.Supp. at 299 (stating that a compelling interest was not shown when investigation was three years long and was not part of some broader investigation involving other participants in other districts). There is no assertion that this is part of any larger investigation or indeed that it is an investigation in tandem with a counter-intelligence or national security investigation. The initial investigation in this case began in May of 2009, almost two years ago. The grand jury investigation commenced soon thereafter in or about August of 2009. At the ex *parte* hearing the government said that they investigation was winding down and would be completed in the next several months. The search of Mr. Kohli's private residence occurred on November 30, 2010, four months ago. (ECF No. 10, 1). This is time for the "identification of key participants and witnesses," as well as "sufficient time to interview and 'lock in' their testimony." *Search of 8420 Ocean Gateway Easton, Md.*, 353 F.Supp.2d at 582. The government expressed a strong interest in interviewing Mr. Ghosh and employees of NAVTEC residing in India before the contents of the affidavit are revealed. These are not "surprise" witnesses unknown to Gurpreet and Navpreet Kohli. While their interviews have been delayed according to the government due to the protocol requirements for interview of foreigners in a U.S. criminal investigation, certainly the Kohlis have known for months that these witnesses would be of interest to the government. The witnesses' location thousands of miles away also mitigates any risk of interference. Moreover, while the government has not yet had substantive discussions with these people, the government has made contact with the witnesses. No report of improper contact of the Kohlis to them has been made. Indeed, Attachment B provided to Mr. Kohli at the time of the search clearly indicated that the government sought evidence of any transactions or communications with the "Government of India, entities/businesses doing business in or with India, and foreign nationals doing business in or with India." (ECF No. 20, 30 ¶ 5). And, of course, there was a specific request for documents related to NAVTEC India. (*Id.* ¶ 6). Although Mr. Kohli clearly would have deduced at that time that Mr. Ghosh was a person of interest to the government, the government has not suggested that Mr. Kholi has attempted to contact him, much less influence or intimidate him.

■ The government has not offered any novel legal theory that risks exposure, and given the charges and other information stated in the warrant and Attachment B, "there would appear to be little mystery as to the government's investigative approach and interests." (*Id.*). The government also seeks to seal information about Mr. Gurpreet Kohli's prior statements to government agencies and to business asso-

ciates and prospective or actual customers. The Court fails to see any basis for withholding this information from the Kohlis. Naturally, the government would prefer not to share its summary and analysis of its investigation, but the subject of a search warrant is entitled to know the investigative bases for the significant invasion of his or her privacy that a search entails. Unless some strategic approach or novel legal theory would be revealed, or the investigation would be demonstrably compromised, the subject has a Fourth Amendment right to the information. *See In re Searches and Seizures*, 2008 WL 5411772, at *4 (rejecting assertions that unsealing a search warrant affidavit would obstruct the government's investigation by revealing its theory of the case as insufficient and conclusory). Revelation of the information in the affidavit of past interviewees and future interviewees, former business associates or employees of NAVTEC or NAVTEC India would not obstruct or compromise the government's investigation.

▆ In regard to the government's third basis, concerns over "national security and counterintelligence," the government repeatedly states that unsealing the affidavit will hamper the government's ability to identify national security and counter–intelligence issues. (ECF No. 16, 6–10). The government stated that such national security threats *may* or *may not* be present in this case, but explained that the government is not at liberty to provide any more details to this Court at this time. The government instead relied on the general statements of fact that Mr. Kohli was trafficking regulated goods to India without a license; the inference apparently being that Mr. Kohli may possibly be revealing classified information to, or working at the direction of, Indian officials. At the Court's request, the government pro-

vided a further submission identifying specific portions of the affidavit that concern potential national security and counter-intelligence matters. (ECF No. 17). Those affidavit statements suggest the Kohlis are doing business, or attempting to do business, "on the side," that is, soliciting business for their own company, NAVTEC, which Northrop Grumman apparently believes is a violation of Mr. Gurpreet Kohli's employment arrangement with it. However, there is no indication in these affidavit statements that the Kohlis were attempting to conceal their NAVTEC business dealings for any purpose other than Mr. Gurpreet Kohli's employment concerns.

Moreover, Gurpreet Kohli acknowledged in an interview with an FBI agent, ostensibly in relation to his son's application for FBI employment, described the nature of the NAVTEC as a defense services business that represented U.S. companies selling radio frequency surveillance products to India, specifically foreign military members from the Indian Ministry of Defense. Also, he reported that the surveillance products that NAVTEC brokered were ITAR controlled and required a license. While he is reported to have lied about his role in NAVTEC and denied any conflict with his Northrop Grumman employment, Mr. Kohli did not conceal the nature of the business itself. Notably, Mr. Kohli is alleged to be dealing with the Government of India, including Indian Cabinet Secretariat, Indian Army, (Defense Electronics Research Laboratory, Ministry of Defense, Center for Airborne Systems, Electronics Corporation of India Limited, Indian Defense Research Development Organization, and Ministry of Home Affairs—not rogue, nongovernmental agents. (ECF No. 3, 6–17; ECF No. 17, 1). Mr. Kohli is already aware that the government is exploring these alleged activities, however, as a number of these agencies are referenced in Attachment B to the search warrant. *See*

(ECF No. 20, 30 ¶ 8) (seeking, inter alia, all documents containing information "pertaining to Bharat Electronics, ECIL, DLRL, and DRDO (as identified in the attached affidavit), and any other Indian government or private entities"). While the goods Mr. Kohli is alleged to be exporting are regulated, and the Court would not presume to challenge the national security determination of the need for regulation, the Court would only note that the goods are not weapons or other obviously dangerous technologies. While this Court is certainly well aware of the ever-present threat to this country's national security in this age of terrorism and counter-intelligence concerns, the Court finds the government's assertions in this case to be wholly conclusory and insufficient.

While there may be some highly theoretical possibility of threats to national security and counter-intelligence, this Court has not been presented with any specific facts satisfying a compelling governmental interest, only speculation. The government argues that the Kohlis' continued business efforts on behalf of NAVTEC, the continued concealment of these activities, and Mr. Gurpreet Kohli's continued employment at a cleared U.S. Government defense contractor poses a significant counter-intelligence risk. (ECF No. 17). The undersigned respectfully disagrees. First, the evidence of continued business dealings on behalf of NAVTEC after the November 30, 2010 search is weak indeed. At the Court's request following the ex *parte* hearing, the government submitted a supplemental declaration detailing all available evidence of the continued export brokering activities of Gurpreet and Navpreet Kohli on behalf of NAVTEC. (ECF No. 20). In its declaration, the government reports that forensic analysis of Navpreet Kohli's laptop following its second seizure on February 11, 2011 indicates that on December 6, 2010, pdf files of technical specifications for products manufactured for several U.S. cleared defense contractors were created and saved, in addition to pdf files of logos for several of these companies. (*Id.* at ¶ 2). The mere creation and existence of these files in and of itself, however, is not evidence of post-search brokering activities. The government also cites two online chat messages written by Navpreet Kohli stating on December 7, 2010, "need something on the side that actually make money . . . navtec is having some issues rt now so need something else," and on January 26, 2011, "poor now and dads poor now no navtec work everyones poor now." (*Id.* at ¶ 5). These non-specific chat messages, apparently to social friends, provide scant support for the contention that the Kohlis have continued to engage in and conceal unlicensed brokering activities after the November 30, 2010 search. Indeed, the chat messages support an opposite conclusion. (ECF No. 20, 2). The messages clearly suggest that NAVTEC business is not being pursued. Second, Mr. Gurpreet Kohli has been suspended from Northrop Grumman as of March 25, 2011, making any brokering much more difficult, if not impossible. The government had stated that Gurpreet Kohli used his employment at Northrop Grumman to both conduct his NAVTEC business and conceal his foreign contacts and business interests. (ECF No. 17, 2). Accordingly, there is no practical possibility of further improper brokering, which revelation of the investigation would cut short.

### Ongoing investigations of Northrop Grumman and OPM

 The government's second argument for the sealing of the affidavit relates to the independent, ongoing investigations of both Northrop Grumman and OPM. The government argues that Northrop Grumman is in the process of per-

forming an internal investigation of Mr. Gurpreet Kohli and is cooperating with the government by turning over any evidence of illegal activity which Northrop Grumman finds. (ECF No. 16, 4). The government argues that revealing the affidavit will directly impair Northrop Grumman's ability to fully investigate Mr. Kohli. (*Id.* at 5, 9). Mr. Gurpreet Kohli's reported suspension on March 25, 2011, largely, if not entirely, moots this argument. In regard to OPM, the government argues that OPM is in the process of its regular five-year review of Mr. Kohli's security clearance. (*Id.* at 4). That, of course, is known to Mr. Kohli. The government further relates that, in the course of this review, OPM received information through a FOIA request, which information was included in the search warrant affidavit. (*Id.* at 9). The government states this FOIA-protected information would not be available to Mr. Kohli absent his own FOIA request, subject to litigation. (*Id.*). If that is truly the case, what right did OPM have to provide to the government?

This Court has found no case law which supports the proposition that an affidavit in support of a search warrant for a *criminal* investigation should remain sealed to protect independent investigations by a private corporation, or even another federal agency. Regarding Northrop Grumman, the effectiveness of a private investigation dealing with continued employment is not a compelling reason to deny a person his Fourth Amendment right of access. Regarding OPM, this Court does not view the fact that OPM received information from a FOIA request as a compelling interest for sealing that portion of an affidavit in support of a search warrant containing this information. Notably, the government did not cite any restriction on OPM use of this released information as a condition of disclosure. The Court knows none as a matter of law.

Moreover, the government has improperly focused on the source of the information; it is irrelevant that the information was originally obtained through a FOIA request. What is relevant is that the government used the information to obtain a search warrant, and the subject of a search warrant has a pre-indictment right to examine the search warrant affidavit. *Oliver*, 2000 WL 263954, at *2; *Search Warrants Issued on Apr. 26, 2004*, 353 F.Supp.2d at 591.

### Identity of "Cooperating" Witnesses

■ The government's third argument for sealing is the protection of the identities of cooperating witnesses, specifically, the identity of Anju Kohli, Mr. Gurpreet Kohli's estranged wife. The government argues that revealing the cooperation of Ms. Kohli will expose her to possible retaliation during Mr. and Ms. Kohli's ongoing divorce proceedings. The government states that Mr. Gurpreet Kohli will attempt to influence Ms. Kohli's testimony by withholding funds, threatening, or intimidating her. (*ECF No. 16*, 9–10).

Outside of the grand jury context, no case has held that protecting the identity of a cooperating witness is a sufficiently compelling governmental interest to override the subject's Fourth Amendment right of access. *See Search of 8420 Ocean Gateway Easton, Md.*, 353 F.Supp.2d at 581 n. 4 (explaining that there has been no importation of the principles of grand jury secrecy to other parts of the law). Courts have found that the protection of the identities of confidential informants does rise to the level of a compelling interest. *N.Y. Times Co.*, 585 F.Supp.2d at 91 ("The government is correct that protecting the identity of informants is a compelling interest...."). This Court notes several important differences between confidential informants and cooperating witnesses.

Unlike the regular witness, confidential informants act like undercover spies for law enforcement. The confidential informant is constantly on the streets surrounded by criminal activity. This environment presents the real risk of physical harm and the realistic potential of death. Distinguishably, the typical cooperating witness is rarely faced with such dangerous circumstances. Furthermore, even where a court has found a compelling interest in protecting the identity of a confidential informant, the court has stated that such an interest may easily be satisfied by redacting the informant's name, rather than sealing the entire affidavit. (*Id.*). Unlike the "violent or drug-related crime conspiracy investigations" in which confidential informants are often utilized, the government's investigation in this case does not present such a danger to cooperating witnesses. *Up North*, 940 F.Supp. at 234.

Even if this Court were to find that protecting the identity of a cooperating witness outside of grand jury proceedings may be a compelling interest, the government has failed to show a realistic danger of physical harm, harassment, or intimidation. *Search of 8420 Ocean Gateway Easton, Md.*, 353 F.Supp.2d at 582. The Kohlis already knew that Anju Kohli had been interviewed, albeit under the guise of an employment-related FBI background investigation of her son. Moreover, the statements attributed to her in the affidavit would have appeared to her relatively innocuous and not on their face seriously damaging, though contradictory to Mr. Gurpreet Kohli's statements. Finally, there is no allegation of any past conduct of Mr. Kohli toward his estranged wife which provides a basis in fact for future danger of physical harm, harassment or intimidation from him to her. According to the government, the Kohlis have been separated since August, 2009, and their divorce was set to be finalized on or about November 29, 2010.

The government has stated generally that Mr. Kohli has a volatile temper as related by several individuals in interviews. (ECF No. 16, 2). At the *ex parte* hearing, for instance, the government related that a repairman allegedly reported that Mr. Kohli threatened him by claiming that he would "cut him up and chop him into little pieces" for not fixing the copy machine fast enough. But these observations of Mr. Kohli's volatility were made in the course of security clearance reviews in 2002 and 2006. Apparently, these reports of a "volatile temper" were not viewed seriously as Gurpreet Kohli received his renewed security clearance in both 2002 and 2006. This strongly suggests that the governmental agency did not see Mr. Kohli's temper as a concern.

At the *ex parte* hearing, the government also related a more recent incident, occurring this year during an interview with an OPM agent regarding his current security clearance review. Mr. Kohli reportedly became very upset, pounded his fists on the table, and screamed at the OPM interviewer. She terminated the interview and security escorted Mr. Kohli out of the building. While this incident does show a heated overreaction and improper conduct by Mr. Kohli, it does not show that he will physically harm, harass, or intimidate his estranged wife or other potential witnesses.

Finally, the government made a further, specific argument for the redaction of ¶ 32 of the search warrant, which describes the government's interview of Anju Kohli, which was "represented to [her] to be in connection with Navpreet Kohli's application to the FBI for a position as an Intelligence Analyst." (ECF No. 3, n. 8). The government has stated that: "[i]t is [its] *understanding* that Gurpreet and

Navpreet Kohli are unaware of the full extent of the information provided by Anju Kohli to the government ..." (emphasis added) (ECF No. 10, ¶ 24). Moreover, it seems that Anju Kohli might not have had—and still may not have—any idea that her remarks to the agents were incriminating to her then estranged husband and son, as the criminal and Northrop Grumman investigations were not known to the Kohlis at that time.

The government argued that the divorce was "acrimonious," but provided neither a statement from Ms. Kohli that she was fearful of her safety nor any specific past conduct of Mr. Gurpreet Kohli demonstrating that there is a serious risk that he will harm, harass or intimidate Ms. Kohli. Moreover, if indeed the divorce was acrimonious, Mr. Kohli might well suspect on that basis that his wife might provide information to the government.

For these reasons, the government has not demonstrated a realistic danger of harm, harassment or intimidation, to conceal this information until required to be disclosed by *Jencks.*

### Grand Jury

■■■■ The government's fourth argument in support of sealing the affidavit is that it contains information obtained by grand jury subpoena and that grand jury materials are secret. This Court notes that the scope of secrecy afforded to grand jury materials is necessarily broad. *Church of Scientology Int'l v. U.S. Dep't of Justice,* 30 F.3d 224, 235 (1st Cir.1994). The policy reasons for such broad protection include (1) preventing the escape of those persons contemplated for indictment, (2) ensuring the utmost freedom in grand jury deliberations, (3) preventing perjury or the tampering of witnesses who plan to testify before the grand jury, (4) encouraging the free disclosure by persons who have information regarding the inquiry of the grand jury, and (5) protecting the innocent that unfortunately become the target of a grand jury investigation. *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The Fourth Circuit has stated that "[t]he substantive content of 'matters occurring before the grand jury' can be anything that may reveal what has transpired before the grand jury." *In re Grand Jury Subpoena (Four Cases),* 920 F.2d 235, 241 (4th Cir.1990) (quoting *In re Grand Jury Matter (Catania),* 682 F.2d 61, 63 (3d Cir. 1982)). This protection prevents those "disclosures that reveal the identity of grand jurors or expected witnesses, reveal witness' expected testimony or questions they would be asked, reveal transcripts or the substance of testimony, reveal the strategy or direction of a grand jury investigation, or report when the grand jury will return an indictment." *United States v. Rosen,* 471 F.Supp.2d 651, 655 (E.D.Va. 2007). However, the protection of grand jury materials extends only so far as to protect "from disclosure 'only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process.'" *Four Cases,* 920 F.2d at 241 (quoting *Catania,* 682 F.2d at 63).

■■■■ Under this standard, " 'disclosure of information coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury is not prohibited.'" *Rosen,* 471 F.Supp.2d at 655, (quoting *In re Sealed Case 99–3091,* 192 F.3d 995, 1001–02 (D.C.Cir.1999)). Therefore, "business records or similar documents 'created for purposes independent of grand jury investigations, which have legitimate uses unrelated to the substance of the grand jury proceedings'" are not protected. *Church of Scientology,* 30 F.3d at 235. Furthermore,

exposure of a document to the grand jury cannot exempt such document from all future disclosure without reference to the interest of Rule 6(e). *Id.* at 236; *see also Senate of Puerto Rico v. Dep't of Justice,* 823 F.2d 574, 582 (D.C.Cir.1987) ("There is no *per* se rule against disclosure of any and all information which has reached the grand jury chambers. . . ."); *Anaya v. United States,* 815 F.2d 1373, 1379 (10th Cir.1987) (allowing disclosure when the requested documents "will not reveal what actually has transpired before a grand jury"); *In re Special March 1981 Grand Jury (Almond Pharmacy),* 753 F.2d 575, 578 (7th Cir.1985) (explaining that documents may be released if they will not seriously compromise the secrecy of the grand jury); Daniel C. Richman, 36 AM. CRIM. L. REV. 339, 350 (1999) ("Materials obtained through the execution of a search warrant, for example, do not become 'matters occurring before the grand jury' simply because the government thereafter presents them to a grand jury."). The government must demonstrate that the release of the documents sought "would compromise the secrecy of the grand jury proceedings." *Church of Scientology,* 30 F.3d at 236.

■ The government has failed to show how revelation of any of the information contained in the affidavit will expose " 'the essence of what takes place in the grand jury room.' " *Four Cases,* 920 F.2d at 241 (quoting *Catania,* 682 F.2d at 63). Instead, the government provides only the general assertion that some of the information was obtained through a grand jury subpoena. (ECF No. 16, 4–5). As stated above, disclosure of information before the grand jury is proper when such information is " 'revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury.' " *Rosen,* 471 F.Supp.2d at 655, (quoting *Sealed Case 99–*

*3091,* 192 F.3d at 1001–02). Disclosing the information contained in the affidavit would not reveal the identity of grand jurors, expected or actual witnesses, questions presented to witnesses, the substance of any testimony, the transcript of the grand jury, the strategy of the grand jury investigation, or when the grand jury is likely to return an indictment. *Rosen,* 471 F.Supp.2d at 655. Exposure of documents to the grand jury does not categorically prohibit such documents from subsequently being disclosed in the future. *Church of Scientology,* 30 F.3d at 236. The information the government seeks to protect in this case does not compromise the " 'essence of what takes place in the grand jury room.' " *Four Cases,* 920 F.2d at 241 (quoting *Catania,* 682 F.2d at 63). Critically, the affidavit itself does not identify the information received from grand jury subpoena rather than other sources.

### *Redacting the Affidavit*

Even if the government's interests were found to be compelling, "the government would still have to demonstrate that no less restrictive means, such as redaction, are available." *Search Warrants Issued on Apr. 26, 2004,* 353 F.Supp.2d at 592. Redaction is able to address "both the interests of [the Property Owner] and the government." *Id.* This Court has carefully reviewed all of the materials submitted by both parties and believes that a limited redaction serves the competing interests of both the movants and the government. Accordingly, the Court has redacted certain limited information regarding the investigation—some unknown to Mr. Kohli—and which information, if known, might interfere with completion of the investigation.

### *Conclusion*

For these reasons, the motion is granted in part and denied in part. Mr. Gurpreet

Kohli apparently has lost his job of many years. The residence of the Kohlis has been subject to a sweeping search, including seizure of computers and cell phones, and broad categories of documents. The courts recognize that the subjects of a warrant have a right to know the basis for such an invasion of privacy that may only be abridged on demonstration of compelling interests. The government has not made that demonstration. The government is to produce the redacted affidavit, Appendix A, to movants on or before April 5, 2011, unless an appeal is taken.